THE CAMDEN AND TRENTON RAILWAY COMPANY

*v.*

HENRY C. ADAMS et al.

[Filed January 18th, 1902.]

1. An agreement contained a clause for the conveyance of a right of way through a lot of land on one side of a railroad, and for the purchase of a piece of land on the other, not defining what estate should be conveyed in the piece to be purchased.—*Held*, under the circumstances shown, an estate in fee should be conveyed.

2. When the terms of a written agreement express a clear and definite meaning, which is neither absurd nor impossible, there is no such latent ambiguity as will render parol proof of the precedent negotiations of the parties admissible.

3. The handing of a deed to an agent of the grantee, in order that he may submit it to his principal to see whether or not it conforms to the terms of an agreement which it is intended to fulfill, is not a delivery and acceptance of the deed.

4. Where a contract for the sale of land is made by the husband only, a decree for specific performance compelling the wife to convey her inchoate dower in the land, will not be made.

Camden & Trenton Ry. Co. *v.* Adams.

On bill for specific performance, answer and proofs.

*Mr. Clarence T. Atkinson* and *Mr. Samuel W. Beldon,* for the complainant.

*Mr. Charles K. Chambers,* for the defendants.

Grey, V. C. (orally).

I do not care to hear counsel for complainant in reply. I have examined the agreement set forth in the bill to ascertain whether any meaning could be given to it different from that which appears to me to be obvious on its face, and whether there was even such doubt about it as ought to lead me to admit testimony explanatory of it or require further study of the questions discussed. The case may be decided now with full justice to its merits.

The bill is filed by the Camden and Trenton Railway Company against Henry C. Adams and wife, asking a decree that complainant may have the strip of land, described as containing seventy-one hundredths of an acre, conveyed to it because the complainant alleges the defendants are bound so to convey, by an agreement, a copy of which is annexed to the complainant's bill, and the original of which has been produced and offered in evidence. The agreement is in the form of a receipt signed by the defendant, and is in the words and figures following:

"Nov. 19, 1900.

"Received of Vandergrift Construction Company the sum of fifty ($50.00) dollars on account of right of way for laying of pipe across land on west side of R. R. at Edgewater Park. Also the purchase of a piece of property on the east side of said Penna. R. R. at Edgewater Park, containing about 8/10 of an acre, as shown on plans prepared by Penna. R. R. Co., for the making of an undergrade crossing at this point. The balance to be due under this agreement is seven hundred and fifty ($750) dollars to be paid on proper execution of deeds to Camden & Trenton Railway Company, which shall be not later than Jan. 1st, 1901.

"(Signed) Henry C. Adams."

All the dispute there is in this case attends the agreement and its performance with relation to the purchase of the piece of property on the east side of the Pennsylvania railroad at

42

Edgewater Park. There appears to be no dispute between the parties as to the description of the property, nor as to its location. The pleadings and the proofs and contentions of the parties are directed to differences between them affecting only the character and extent of the estate in the land which, under the terms of this agreement, the vendor defendant agreed to pass. He himself admits that the price named has been paid him in full. He has executed and delivered a deed which describes the property with accuracy. The description and location as set forth in this deed are not objected to by the complainant. The dispute between the parties is that the defendant insists that the contract of sale is an undertaking to convey only a limited use of the lands, and he contends that by his deed he has conveyed all the estate he is obliged to grant. On the other hand the complainant says it is entitled, under the agreement, to the conveyance of a fee-simple estate in the lands.

The only points argued have been the questions whether the original receipt agreement obliges the defendant to convey a fee-simple estate in the second tract referred to, on the east side of the Pennsylvania railroad, and whether the complainant has ratified the defendant's construction of the receipt agreement by the acceptance of the deed conveying only a use of the property for street purposes.

The deed from the defendant was made and delivered under these circumstances: Mr. Clark, acting for the vendee, went to the defendant's house with the deed already drawn to convey an estate in fee-simple in the second lot. Mr. Adams, the defendant, accepted the deed as accurately expressing his agreement to convey in every particular except the estate in the lands. This clearly appears, for Mr. Adams subsequently executed the deed as drawn, changing only the character of the estate conveyed. Mr. Clark had not made the bargain for the lot and did not know anything about its terms, except that the lot was to be conveyed for the price of $700. His call on Mr. Adams was in the evening. He presented the deed and left it over night with Mr. Adams for execution.

The testimony does not show that Mr. Adams then and there, in Mr. Clark's presence, examined the deed and made any objec-

tion to it; and it is not clear that Mr. Adams then knew, while Mr. Clark was present, that the deed conveyed an estate in fee. That evening Mr. Adams took the deed to a scrivener, and in the absence of Mr. Clark, or anybody else representing the Camden and Trenton company, he caused to be inserted in the *habendum et tenedum* clause the following words:

"Subject to the full right of the grantors, their heirs and assigns, and of the general public to use it, the said described strip of land, as a street and thoroughfare forever, and they, the said grantee, their successors and assigns to use the said land for no other purpose."

Mr. Clark testifies that his attention was called to this change the next morning, and he immediately objected to it. He testifies that he told Mr. Adams that he did not know what the terms of that agreement were, but that he would take this deed under protest as to the change, and that it would have to be subject to the inspection of the grantee to see whether it was satisfactory and in accordance with Adams' agreement. Mr. Adams does not expressly deny that there was such a difference between the parties, nor does he claim that the deed was then and there finally accepted. He qualifies Mr. Clark's statement by minimizing its force. The testimony of Mr. Clark, taken with the fact that the deed, as originally drawn and presented to Mr. Adams in behalf of the company, was a conveyance in fee, satisfies me that Mr. Adams knew that Mr. Clark came expecting and intending to purchase an estate in fee. Mr. Adams knew this when he changed the deed. It is entirely reasonable that Mr. Clark (being unacquainted with the details of Mr. Adams' agreement) should, under the circumstances, have insisted that before the deed, as changed by the latter, was accepted as fulfilling that agreement, it should be submitted to the Camden and Trenton Railway Company, to see whether or not it conformed to its terms. That was a perfectly natural condition, one which Mr. Adams might, with entire propriety, have assented to. In view of the affirmative testimony of Mr. Clark, I believe Mr. Adams did assent to it. The testimony, considered in all its aspects, strongly indicates that Mr. Clark never had any authority to accept, as a performance of the agreement, the changed deed which Mr. Adams exe-

cuted, and his conversation with Mr. Adams disclosed to him this want of authority. The result is that although the deed, as changed, physically passed from Mr. Adams to Mr. Clark, it was neither tendered nor received with any intent that, by its passage from one to the other, a delivery of it should be accomplished.

Almost immediately after Mr. Clark received the changed deed he submitted it to Mr. Mitchell Perkins, the secretary of the grantee, the complainant company. No action was taken by the company, in either acceptance or refusal of the deed, for several months. Mr. Adams did not ask any action. He did not change his position in any way upon the assumption that the deed conveyed only the use of a way and not a fee. The grantee company used part of the land, but under either construction of the obligation of the contract it might have done this. Mr. Adams had the use of the purchase-money. The delay of two or three months in applying for the correction of the deed has not subjected Mr. Adams to any disadvantage. When it was applied for he refused it, in terms which showed that no matter how early the application might have been made he would have insisted on his construction of the original agreement, that it obliged him to convey only a use for a street.

The defendant sought, under the claim that the terms of the contract of November 19th, 1900, were confused and ambiguous, to offer testimony to show, by proof of preceding negotiations, that it was not intended or agreed between the parties that Mr. Adams should convey an estate in fee-simple in the premises in question. In short, he claimed the right to show, by parol, that the dealings between the parties contemplated the conveyance of an estate as is passed by the deed which he has delivered; that the limitations expressed in the *habendum* clause, by which the deed passes only a right to use "as a street and thoroughfare forever," were just what the complainant dealt for and agreed to purchase.

It is settled in this state that written agreements which express a definite contract cannot, in the absence of fraud, mutual mistake or illegality, be varied by parol evidence touching the preceding negotiations of the parties. *Naumberg* v. *Young, 15 Vr. 331; Van Horn* v. *Van Horn, 4 Dick. Ch. Rep. 328 (Court of*

*Appeals*); *Morris* v. *Kettle, 28 Vr. 221.* If the contract, as written, is so ambiguous that its expressions are susceptible of more than one meaning, evidence of the accompanying negotiations is admitted in order to point out which meaning was within the intent of the parties.

The defendant's answer sets up neither fraud nor mistake in the agreement. On the contrary he insists that the agreement, as drawn, obligated him only to convey a right to use for a street, and this he contends he has done by his deed which, he says, the complainant has fully accepted as performance of his agreement.

This brings us back to an examination of the original contract, to see whether there is such ambiguity on its face that it may not be interpreted within its own expressions and outbounds. As stated the contract deals with two pieces of property. The first one is the right of way and the second one is the purchase of a piece of property. The words on which the defendant bases his claim are these:

"Also the purchase of a piece of property on the east side of said Penna. R. R. Co., at Edgewater Park, containing about 8/10 of an acre, as shown on plans prepared by Penna. R. R. Co. for the making of an undergrade crossing at this point."

The draftsman was evidently not an artist in drawing instruments of this character, but it is equally evident that he knew the difference between the grant of a right of way and the purchase of a piece of land. The contract, as signed by Adams, shows that when it obligated him to convey a right of way, it described the property as a right of way, and it may be fairly said that when it dealt with the second piece and said nothing about a right of way, but is expressed in language such as is ordinarily used in the buying of land outright, it did not mean he should convey only a right of way. The contract says that Mr. Adams received the money for "the purchase of the piece of property on the east side of the Pennsylvania railroad at Edgewater Park." These words of themselves amounted, under the circumstances, to an undertaking to convey a fee-simple estate. See *McCormick* v. *Stephany, 16 Dick. Ch. Rep. 208,* and cases there cited. The

words which follow were definitive, not of the estate to be conveyed, but of the contents of the property, the location of it and the place where more accurate description could be found. The thing "shown on plans prepared by Penna. R. R. Co., for the making of an undergrade crossing at this point," was the eight-tenths of an acre agreed to be conveyed and purchased. It would be an obvious distortion of the agreement to hold that these words, which describe the Pennsylvania railroad plans, applied to the estate which Adams agreed to convey. I find nothing doubtful in them which would justify the receipt of explanatory testimony on the ground that they raise a latent ambiguity.

The result is that the defendant has not performed his agreement in accordance with the legal effect of its terms, and the dispute being solely as to whether or not he has passed such an estate as under the agreement he is bound to convey, the complainant is entitled to have the relief which is prayed for in its bill except in one particular.

I will hear counsel as to whether there can be, under this agreement (which is made only by the husband, Henry G. Adams), a decree that his wife shall convey her inchoate dower interest in the land.

[After hearing further argument.]

No ground upon which I can make a decree to compel this lady to make this deed has been shown. The matter is discussed in the recent case of *McCormick* v. *Stephany, ubi supra,* where the decisions on the point in this state are collected.

Counsel may submit a decree for the relief prayed for against Henry C. Adams only, and as the litigation has been along the whole line, with costs. I will refuse relief as against Mrs. Adams.